UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

_____

U.S. BANK NATIONAL ASSOCIATION,       CIVIL ACTION
AS TRUSTEE, on behalf of the Registered     Case No. 20-cv-208
Holders of CITIGROUP Commercial Mortgage
Securities Inc., Commercial Mortgage
Pass-through Certificates, Series 2014-GC21,

Plaintiff,

v.                       **COMPLAINT**

HAROLD LANGHAMMER,

Defendant.
_____

      Plaintiff U.S. Bank National Association, as Trustee, on behalf of the Registered Holders of CITIGROUP Commercial Mortgage Securities Inc., Commercial Mortgage Pass-through Certificates, Series 2014-GC21 ("Lender"), for its claims and causes of action against Defendant Harold Langhammer ("Defendant" or "Guarantor") herein states and alleges as follows:

## PARTIES

      1.   Lender is a federally chartered national banking association with its main office located at 425 Walnut Street, Cincinnati, Ohio 45202.

      2.   Defendant is an individual who resides at N8563 Sandy Hook Road, Brooklyn, Wisconsin 53521.

## JURISDICTION AND VENUE

      3.   Federal jurisdiction is based upon diversity of citizenship, in that the amount in controversy exceeds $75,000 and the parties are of diverse citizenship, as required by 28 U.S.C. § 1332.  More specifically, Lender is a citizen of Ohio pursuant to 28 U.S.C. 1348, with its main office, as listed in its federally-issued charter, located at 425 Walnut Street, Cincinnati, Ohio 45202, and Defendant is an individual who resides in the State of Wisconsin.

4.  This Court has personal jurisdiction over Defendant pursuant to Wisc. Stat § 801.05.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### FACTUAL BACKGROUND

**The Loan**

6.  On or about April 2, 2014, Rait Funding, LLC ("Original Lender") lent the original principal amount of $8,000,000.00 (the "Loan") to The Collegiate of Madison LLC ("Borrower").  The Loan is secured by improved commercial real property owned by the Borrower located at 513-515 North Lake Street, Madison, WI 53703 (as more specifically defined in the Loan Documents, the "Property").

7.  The Loan is evidenced by, among other things, (i) a Promissory Note dated April 1, 2014, in the original principal amount of $8,000,000.00 executed by Borrower and payable to Original Lender or its successors and assigns (together with all alonges thereto, the "Note"); (ii) a non-recourse Loan Agreement, dated April 1, 2014, between Original Lender or its successors and assigns and Borrower (the "Loan Agreement"); and (iii) a Mortgage and Security Agreement, dated April 1, 2014, executed by Borrower, in favor of Original Lender or its successors and assigns, recorded on April 3, 2014, as Document # 5061879, with the Dane County Register of Deeds (the "Security Instrument").  True and correct copies of the Note, Loan Agreement, and Security Instrument are attached hereto as Exhibits A, B, & C, respectively, and incorporated herein by reference.

8.  Among other things, the Loan Agreement states:

[T]he Debt [(outstanding principal under the Loan)] shall be fully recourse to Borrower in the event that: (i) the first full monthly payment of principal and interest under the Note is not paid when due; (ii) Borrower fails to comply with any provisions hereof relating to cash management or fails to appoint a new property manager upon the request of Lender, fails to cooperate with any New Manager or fails to comply with any limitation on instructing the property

2

> manager, each as required by and in accordance with, as applicable, the terms and
> provisions of, this Agreement, the Assignment of Management Agreement, if any,
> and the Security Instrument; (iii) any representation, warranty or covenant
> contained in Article 5 or Article 6 hereof is violated or breached; (iv) a
> Bankruptcy Event occurs; or (v) Sections 11.1 or 11.6 hereof are violated or
> breached.

Loan Agreement, Exhibit B, p. 90.

9.   Under the Loan Agreement, a "Bankruptcy Event" means, among other things, when

"Borrower files a voluntary petition under the Bankruptcy Code or any other Creditor Rights

Law[.]"  Loan Agreement, Exhibit B, p. 3.

10.   Under Article 6 of the Loan Agreement, Borrower agreed that it "shall be an Event of

Default hereunder if, without prior written consent of Lender, a Sale or Pledge of the Property or

any part thereof or any legal or beneficial interest therein occurs[.]"  Loan Agreement, Exhibit B,

p. 54.

11. Under Article 6 of the Loan Agreement, "Sale or Pledge" is defined as "a voluntary or

involuntary sale, conveyance, mortgage, grant, bargain, encumbrance, pledge, assignment, grant

of any options with respect to, or any other transfer or disposition . . . of a legal or beneficial

interest."  Loan Agreement, Exhibit B, p. 54.

12. The Loan Agreement further provides that "'Property' shall have the meaning set forth

in the Security Instrument."

13. The Security Instrument defines the term "Property" to include, among other things:

> All machinery, equipment, fixtures (including, but not limited to, all heating, air
> conditioning, plumbing, lighting, communications and elevator fixtures),
> furniture, software used in or to operate any of the foregoing and other property of
> every kind and nature whatsoever owned by Borrower, or in which Borrower has
> or shall have interest, now or hereafter located upon the Land and the
> Improvements [(which includes "buildings, structures, fixtures, additions,
> enlargements, extensions, modifications, repairs, replacements and improvements
> . . . erected or located on the Land")] , or shall have an interest, now or hereafter
> located upon the Land and the Improvements, or appurtenant thereto, and usable
> in connection with the present or future operation and occupancy of the Land and

3

the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Land and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Land and the Improvements (collectively, the "Personal Property"), and the right title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "Uniform Commercial Code"), and all proceeds and products of the above[.]

Security Instrument, Exhibit C, Section 1.1.

**The Guaranty**

14. In order to induce Original Lender to make the Loan, Defendant executed and delivered a Guaranty of Non-Recourse Carveouts by which he unconditionally and irrevocably guaranteed payment when due under the Loan (the "Guaranty," and together with the Note, Loan Agreement, and Security Instrument, referred to as the "Loan Documents").  A true and correct copy of the Guaranty is attached hereto as Exhibit D.

15. Among other things, the Guaranty states:  "Guarantor hereby, jointly and severally, absolutely, unconditionally, and irrevocably [] guarantees and agrees to act as surety with respect to those obligations and liabilities for which Borrower is **personally** liable pursuant to the terms and conditions of the Loan agreement[.]"  Guaranty, Exhibit D at p. 1 (emphasis added).

**The Assignment**

16. Original Lender and US Bank entered into an Omnibus Assignment (the "Assignment"), wherein Original Lender "hereby sells, transfers, assigns, delivers, sets-over and conveys to" US Bank "all right, title, and interest of" Original Lender in the Loan, including Original Lender's:

"[R]ight, title and interest in any guaranties, loan participation interests, indemnities, claims, collateral, insurance policies, certificates of deposit, letters of credit, escrow accounts, performance bonds, demands, causes of action and any other collateral arising out of and/or executed and/or delivered in or to or with

4

respect to the Loan, together with any other documents or instruments executed
and/or delivered in connection with or otherwise related to the Loan."

A true and correct copy of the Assignment is attached hereto as Exhibit E.

17. The allonges to the Note evidence the assignment thereof and are attached as part of

Exhibit A.  Lender currently holds the Note and is the owner and holder of the Loan.

## Recourse Events

18. On November 23, 2019, Borrower breached the Loan Documents by filing a voluntary
petition for relief under chapter 11 of the Bankruptcy Code, captioned *In re The Collegiate of
Madison, LLC*, in the United States Bankruptcy Court for the Western District of Wisconsin,
Case No. 19-13930-cjf ("Borrower's Bankruptcy Case").  A true and correct copy of the
voluntary bankruptcy petition is attached hereto as Exhibit F.

19.  In addition, on or about July 26, 2016,[1] Borrower breached the loan documents when
Borrower entered into an Equipment Finance Agreement with Ascentium Capital, LLC
("Ascentium"), wherein Borrower purported to provide Ascentium a security interest in part of
the Property (*i.e.*, a Pledge or Sale under the Loan Agreement), which included certain boilers,
beds, sofas, and loveseats, located on the Property (the "Finance Agreement," and together with
"Borrower's Bankruptcy Case," the "Full Recourse Events").  Ascentium filed a financing
statement (Filing # - 170010214715) on July 27, 2017, in which it referenced the Equipment
Finance Agreement.

20. As a result of the Full Recourse Events and Borrower's breaches under the Loan
Documents, Borrower is personally liable for amounts due and owing to Lender under the Loan,
which is at least $9,050,590.66, as of February 25, 2020, plus prepayment fees, accrued and
unpaid interest, costs, fees, expenses, attorney's fees, and other fees and charges permitted under

---

[1] According to Ascentium Capital, LLC's Schedule D under Borrower's Bankruptcy Case.

the Loan Documents (the "Indebtedness").  The amount of the Indebtedness continues to increase with the accrual of additional Note and Default Interest, fees, charges and costs recoverable under the Loan Documents.

21. Under the Guaranty, and as a result of the Full Recourse Events and Borrower's breaches under the Loan Documents, Guarantor is personally liable to Lender for the Indebtedness.

22. Guarantor has failed to pay the Indebtedness, as required under the Loan Documents.

## COUNT ONE
## BREACH OF CONTRACT

23. Lender incorporates by reference paragraphs 1 through 22 of this Complaint as though fully set forth herein.

24. The Guaranty signed by Guarantor provides that Guarantor shall be personally liable to Lender with respect to liabilities for which Borrower is personally liable pursuant to the terms and conditions of the Loan.

25. The Loan Agreement provides that outstanding principal under the Loan shall be fully recourse to Borrower in the event that, among other things, Borrower violates Article 6 of the Loan Agreement or a Bankruptcy Event occurs.

26. Borrower violated Article 6 of the Loan Agreement when it entered into the Finance Agreement.

27. Borrower's Bankruptcy Case constitutes a Bankruptcy Event.

28. Accordingly, per the Guaranty, Guarantor is personally liable to Lender for the Indebtedness.

6

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in the amount of at least the Indebtedness under the Loan, which is in excess of $7,724,319.62, or such other amount as shall be proven at trial, plus accrued and unpaid interest, costs, fees, expenses, attorney's fees, and other fees and charges permitted under the Loan Documents, and such other and further relief as is just and proper.

Dated: March 9, 2020

**BALLARD SPAHR LLP**

By: s/ James A. Lodoen
James A. Lodoen (MN Atty. No. 173605)
2000 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: (612) 371-3234
Facsimile: (612) 371-3207
E-mail: lodoenj@ballardspahr.com

**ATTORNEYS FOR
U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE, ON
BEHALF OF THE REGISTERED
HOLDERS OF CITIGROUP
COMMERCIAL MORTGAGE
SECURITIES INC., COMMERCIAL
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2014-GC21**

7